IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ROBERT MICHAEL HUSKEY                                                                                   PLAINTIFF

v.                             Civil No.   6:21-cv-06141

SERGEANT RAUL HART, Ouachita
River Correctional Unit (ORCU); LIEUTENANT
DILLON VOSS, ORCU; DR. GUY HENRY,
Staff Physician, Wellpath LLC; NURSE SUSAN
LAMBRIGHT, Wellpath LLC; and NURSE TISHA
WADE, Wellpath LLC.                                                                                     DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Robert Michael Huskey ("Huskey"), proceeds *pro se* and *in forma pauperis* in this civil rights lawsuit filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court on the Motion for Summary Judgment (ECF No. 34) filed by Arkansas Division of Correction ("ADC") Defendants, Sergeant Raul Hart, and Lieutenant Dillon Voss (collectively "the ADC Defendants"). Dr. Guy Henry, Nurse Susan Lambright, and Nurse Tisha Wade (collectively "the Medical Defendants") also filed a Motion for Summary Judgment (ECF No. 37). Huskey has responded (ECF Nos. 43 & 46) to both Motions. The Motions are ready for decision.

### I.     BACKGROUND

At all times relevant to this case, Huskey was incarcerated in the Ouachita River Unit of the ADC. In his Amended Complaint (ECF No. 7) filed on November 15, 2021, Huskey alleges

1

that from May 6, 2021, to May 21, 2021, Defendants were deliberately indifferent to his serious medical needs when they failed to provide his seizure medications and/or failed to take appropriate action after he complained about not receiving his medication. *Id.* at 4 & 13-14.[1] As a result, Huskey alleges he suffered multiple seizures. *Id.* at 4. He sustained "large bumps" on his head and face, "bruises, loss of bladder and bowel control along with emotional and mental damage." *Id.* at 5. During his deposition, Huskey testified that the type of seizures he has cause "memory loss of hours, days." (ECF No. 34-1 at 5-6). He is suing the Defendants in their individual capacities only. (ECF No. 7 at 5).

At all times relevant to this lawsuit, Huskey was incarcerated in the Ouachita River Correctional Unit of the ADC.[2] Huskey has epilepsy and has been taking levetiracetam and phenobarbital to control seizures for approximately eight or nine years. (ECF No. 34-1 at 16). He takes these medications twice daily. *Id.* at 16-17. As these medications are considered to be part of Huskey's chronic care, he does not have to request refills of the medication. (ECF No. 34-1 at 17).

At the ADC, medication is distributed six times daily—referred to as "pill pass" or "pill call." (ECF No. 34-2 at 1). "During pill pass the nurse would have a list of what medications an inmate was to receive and when the inmate was to receive the medication." *Id.* The nurse is escorted by an ADC employee. *Id.* In the course of his duties, Lieutenant Voss would escort the assigned nurse during pill pass. *Id.* Likewise, Sergeant Hart would escort the assigned nurse during pill pass. (ECF No. 34-3 at 2).

---

[1] All citations to exhibits are to the CM/ECF docket number and page rather than to the alphabetical or numerical designations of the parties.
[2] Huskey notified the Court of his release from incarceration by filing a change of address (ECF No. 49) on December 21, 2022.

Huskey submitted an emergency grievance on May 21, 2021, alleging "medical" was allowing "either my blood pressure meds. or seizure medication to run out or expire." (ECF No. 34-4 at 53). The grievance was assigned number 0R 21-00411.[3] *Id.* Huskey mentioned the time frame May 6, 2021, to May 21, 2021, and complained of having chest pains. *Id.* He named each of the Defendants. *Id.* Huskey complained of an "ongoing battle to receive [his] life sav[]ing medications." *Id.* His grievance was found to have merit as "[a] review of your Drug Prescription Orders indicates that numerous doses of your Phenobarbital and Levetiracetam are not documented between May 9 and 21. However, it is currently being administered as ordered." *Id.* at 55. Huskey appealed the decision because it failed to "explain how such an oversight of this proportion could have occur[r]ed to let such an important medication as Phenobarbital to go missing &/or expired." *Id.* His appeal was denied. *Id.* at 57. It was noted that "[r]eview of [Huskey's] Medical Administration Records from the date of the medical department's response to July 14, 2021, [showed Huskey had] received his medication as prescribed." *Id.*

Huskey admitted that sometimes even when he is on his medication he has seizures. (ECF No. 34-1 at 31). However, he testified the seizures occur more frequently when he does not have his medication. *Id.* at 30-31. Huskey's "anxiety gets high" when he does not get his medication and this increases the likelihood of his having a seizure. *Id.* at 31.

Huskey testified that Dr. Henry was aware that his seizure medication "had expired or discontinued. He actually reordered them and then discontinued them and then reordered, put them on hold, and then discontinued again through this time period." (ECF No. 34-1 at 33). Specifically, Huskey testified that on May 15th his phenobarbital was discontinued and then on

---

[3] This is the sole grievance before the Court. Huskey's complaint is limited to the time frame May 6th to May 21st, 2021. No other grievances having to do with missed doses of medication have been submitted.

May 19th it was reordered and put on hold. *Id.* at 40. Huskey indicated his levetiracetam was discontinued on May 17th, received from the pharmacy on May 19th, and discontinued on May 20th. *Id.*

During this time period, when Huskey was taken to the infirmary after a seizure, he saw Dr. Henry briefly. (ECF No. 34-1 at 34). Huskey discussed the medication problem with Dr. Henry who had the director of medicine look up Huskey's medication. *Id.*

With respect to Nurse Lambright, Huskey merely intended to use her as a witness. (ECF No. 34-1 at 34). He intended to have her testify that there were times when he did not have an active order for his medication. *Id.* Nurse Lambright would explain that she could not provide him with the medication because it had been discontinued. *Id.* at 35. Nurse Lambright advocated for him to get his medication. *Id.*

With respect to Nurse Wade, Huskey testified that when he asked her about not receiving his seizure medication "she said you don't have an order for it; therefore, you don't get it." (ECF No. 34-1 at 35). Huskey indicates "she would not listen to anything I had to say or any questions I had about the medication." *Id.* Huskey testified Nurse Wade was aware of his seizure disorder and would not try to correct the problem. *Id.* at 36. In short, he believed she just dismissed him and moved on. *Id.* at 35-37.

Although Lieutenant Voss could not recall Huskey complaining about not receiving his medication from May 6th to May 21st, Lieutenant Voss indicates that when an inmate made such a complaint, it was his practice to instruct the inmate to submit the complaint in a grievance. (ECF No. 34-2 at 2). After he signs a grievance, Lieutenant Voss takes a copy of the grievance to the unit's medical staff. *Id.* He also informs medical staff that "the inmate was complaining about

not receiving their medication." *Id.* Lieutenant Voss states "Inmate Huskey would often complain about not receiving one of his medications." *Id.* Each time, Lieutenant Voss followed the same procedure when Huskey "stated to me that he was not receiving his seizure medication." *Id.*

Sergeant Hart indicates that "[w]hen Inmate Huskey informed me that he was not receiving his seizure medication, I logged it and notified the medical staff that Inmate Huskey said that he had not received his medication." (ECF No. 34-3 at 2). When Huskey would express concern about having a seizure, "the correctional staff would notify medical and escort him to the infirmary for treatment." *Id.* Sergeant Hart asserts that the "only thing I could do was notify medical staff. I do not have the authority to override the treatment decisions of the unit's medical staff." *Id.*

According to Huskey, both Lieutenant Voss and Sergeant Hart were aware of the fact that he was not receiving his medication during the relevant time period. (ECF No. 34-1 at 15-16). Huskey did not know if Sergeant Hart had any medical training but Huskey believed Lieutenant Voss did. *Id.* Huskey verified that the time frame at issue was May 6th to May 21st. *Id.* at 19. While they did not deny him medication, Huskey testified both Lieutenant Voss and Sergeant Hart were aware of the situation. *Id.* He believed they "didn't let the nurses know or any of their superiors so they could find out what the issue was." *Id.* Huskey points out he was in a restrictive housing unit and had no "access to go to the nurses, to the doctor, other than when they come to the cell." *Id.* at 19.

When he did not have his medication, Huskey testified he had "several seizures, large knots on [his] head, busted lip, incontinence. . . . loss of memory, pain, suffering." (ECF No. 34-1 at 21). He does not know if anyone else was present during his seizures. However, Huskey was

5

told both Sergeant Hart and Lieutenant Voss had held his head while he was having seizures until someone from the medical unit arrived.  *Id.*

By affidavit, Dr. Thomas Braswell indicates he was asked to review Huskey's ADC medicals records "to determine if the care and treatment he was provided for his seizure disorder from May 6, 2021 through May 21, 2021 was medically appropriate."  (ECF No. 39-1 at 1). According to Dr. Braswell, the medication administration record reflects that Huskey "received levetiracetam and phenobarbital as prescribed except for one dose on the morning of May 17, 2021."  *Id.*  Dr. Braswell indicates this is confirmed by Huskey's therapeutic phenobarbital level. *Id.*

Dr. Braswell opines that "[a]lthough Mr. Huskey did suffer from seizure activity between May 6 and May 21, 2021, there is no indication that his seizure activities were caused by any missed medications.  Notably, Mr. Huskey did not have any injuries form any seizures between May 6 and May 21, 2021."  (ECF No. 39-1 at 1).  Dr. Braswell concludes that "the medical care and treatment provided to Mr. Huskey related to his seizures from May 6 to May 21, 2021 was appropriate, adequate and timely."  *Id.*

The record reflects that Huskey was seen at the Baptist Health Medical Center in Hot Spring County on May 4, 2021, after suffering from multiple seizures beginning on May 3rd. (ECF No. 39-2 at 1).  Huskey was also complaining of abdominal pain.  *Id.*  It was noted that Huskey was not seizing anymore and his labs were unremarkable.  *Id.* at 3.  Huskey did have constipation based on his abdominal x-rays.  *Id.*  Huskey was given levetiracetam and lorazepam. *Id.* at 4.  Huskey was also prescribed MiraLAX for three days for constipation.  *Id.*

On the evening of May 9, 2021, medical staff were called by security because Huskey was

having a seizure. (ECF No. 39-3 at 1). Nurse Wade entered Huskey's cell and found him on his right side on the floor breathing but unresponsive. *Id.* Huskey was taken to the infirmary. *Id.* Huskey had two additional seizures one lasting one minute and the other twenty-seven seconds. *Id.* He was administered levetiracetam, phenobarbital, and other scheduled medications. *Id.* The following morning, a nurse visited Huskey in his cell at which time he voiced no complaints. *Id.*

On May 17, 2021, medical staff were again called by security because Huskey was having a seizure. (ECF No. 39-4 at 1). Nurse Ceraphin Monga visited Huskey in his cell and found him sleeping on the floor with no apparent injuries. *Id.* Huskey was taken to the infirmary. *Id.* Huskey was given Tylenol for his headache and observed for four hours without any seizure activity. *Id.*

On May 17, 2021, Dr. Thomas Daniel entered a prescription for phenobarbital 97.2 mg, twice a day, for thirty days, with five refills. (ECF No. 39-5 at 1). Dr. Daniel also prescribed levetiracetam, 1000 mg., twice daily for thirty days, with five refills. *Id.* On May 19, 2021, Huskey was seen by Dr. Henry for a chronic care visit. *Id.* According to the notes, Huskey complained of having numerous seizures since he was placed in isolation. *Id.* It is noted that Huskey believed this was due to sleep deprivation, noise, and the lights being on all the time. *Id.* Huskey's phenobarbital level was noted to be "27 (15-40)." *Id.*

Dr. Henry noted Huskey's seizures were poorly controlled and wrote a prescription for phenobarbital 97.2 mg, one tablet twice daily, for thirty days, with five refills. (ECF No. 39-5 at 2). After the word status, the record states "Order/service Hold refilled as requested (OH)(CL).[4]"

---

[4] The Court is offered no explanation of what this comment means, whether it was in anyway related to the phenobarbital prescription written by Dr. Daniel having been filled, or why it was even necessary to re-do the

7

*Id.* Dr. Henry also wrote a prescription for levetiracetam 500 mg, three tablets twice daily, for thirty days, with five refills. *Id.* After the word status, the record states: "Received from Pharmacy." Note was made that this increased Huskey's daily levetiracetam dosage from 2000 mg daily to 3000 mg daily. *Id.* Huskey was to be seen again in chronic care in three months. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is

---

prescription written by Dr. Daniel on May 17th. No affidavit has been provided by Dr. Henry.

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. The ADC Defendants' Motion for Summary Judgment

The ADC Defendants move for summary judgment arguing first that they did not violate Huskey's constitutional rights. In this regard, Sergeant Hart and Lieutenant Voss point out they are not medical professionals and they can only inform the medical staff about the problem being raised—here, that Huskey was not getting his medication. Because there was no constitutional violation, they next argue they are entitled to qualified immunity.

In opposition, Huskey first points out an alleged inconsistency in Lieutenant Voss's affidavit where he first says he does not remember Huskey complaining of missed doses of medication during the relevant time frame---May 6, 2021, to May 21, 2021. (ECF No. 44 at 1). Later, Lieutenant Voss says that Huskey often complained about receiving one of his medications. The Court does not find these two statements to be inconsistent. The first statement applies only to the limited time frame at issue in this case. The second statement is broader and potentially covers the entire period of time during which Huskey was confined. Huskey maintains there is an issue of fact as to how often he missed his seizures medications. Contrary to Dr. Braswell's affidavit, Huskey maintains there is no record of him receiving his seizure medications on May 1st, May 5th-May 6th, and May 17th, 2021. (ECF No. 45 at 1).[5]

---

[5] The Court commends Huskey on his summary judgment responses. He followed the Court's Orders (ECF Nos. 40 & 42) on how to respond to the summary judgment motions. His response is clear and concise. Huskey additionally refers the Court to various exhibits in the summary judgment record to illustrate his points.

The Eighth Amendment's prohibition of cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.,* 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a denial of medical care claim, Huskey must prove that: (1) he suffered from a serious medical need; and (2) Defendants actually knew of and disregarded that need. *Roberts v. Kopel,* 917 F.3d 1039, 1042 (8th Cir. 2019). There is no dispute that having epilepsy constitutes a serious medical need. Here the question is whether Huskey can show that Sergeant Hart and Lieutenant Voss actually knew Huskey faced "a substantial risk of serious harm and did not respond reasonably to the risk." *Id.,* (citing *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 726 (8th Cir. 2018)).

Deliberate indifference has been described as being akin to "criminal recklessness," *A.H.*, 891 F.3d at 726, "which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald,* 638 F.3d 905, 914-15 (8th Cir. 2011)(quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Deliberate indifference "may include [prison guards] intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey,* 49 F.3d 1344, 1346 (8th Cir. 1995).

Here, the evidence shows Sergeant Harp and Lieutenant Voss both had pill call duties, *i.e.,* they accompanied the nurses. They were in a position to hear Huskey's complaints about not having his seizure medication. Their sworn affidavits state they delivered any grievances Huskey wrote about the issue to medical staff and informed medical staff of the problem. Sergeant Hart and Lieutenant Voss were not medical personnel and no evidence has been presented from which it could be inferred that they had any input into, or were directly involved in, the decision on how

10

to treat Huskey's epilepsy or if, or when, he should receive his prescribed medications. There is no evidence that they interfered with Huskey's medication distribution.

"Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis" and treatment. *Holden v. Hirner,* 663 F.3d 336, 343 (8th Cir. 2011); *see also Crooks v. Nix,* 872 F.3d 800, 803 (8th Cir. 1989)(prison official lacking medical expertise cannot be held liable for a wrongful diagnostic judgment of a physician). Sergeant Hart and Lieutenant Voss lacked the authority to prescribe or distribute medication. In these circumstances, once medical staff were aware that Huskey did not receive his seizure medication, there was nothing more the ADC Defendants could have done. Sergeant Harp and Lieutenant Voss acted reasonably under the circumstances and made sure medical staff were aware of the issue of the missing doses of seizure medication. In fact, the nurse distributing medication was made aware of the problem simultaneously with the ADC Defendants. In short, there is no genuine issue of material fact as to whether Sergeant Harp and Lieutenant Voss acted with deliberate indifference to Huskey's serious medical needs.

Further, having found that the facts do not make out a constitutional violation, Sergeant Harp and Lieutenant Voss are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity). The ADC Defendants are entitled to summary judgment in their favor.

### B. The Medical Defendants' Motion for Summary Judgment

The Medical Defendants argue that they are entitled to summary judgment because there is no evidence they were deliberately indifferent to Huskey's serious medical needs. (ECF No.

37 at 1). In support, they offer the affidavit of Dr. Thomas Braswell which asserts Huskey received appropriate, adequate, and timely medical attention for his seizure disorder and, except for one occasion on May 17th, received his seizure medication.

In opposition, Huskey argues the Medical Defendants have previously and continued to allow his prescriptions to run out causing him to miss doses. (ECF No. 46 at 1). While Huskey agrees in general that he rarely missed a dose of his seizure medication, he said it did happen. (ECF No. 47 at 1). Huskey points out that part of the relief he is seeking is a "standing order that sufficient stock is kept on hand so that he never misses a dose of his seizure medications.[6]" *Id.* He asserts that any of the seizures he suffers after missing a dose of his medication could cause serious injury or even death. *Id.* at 2. Additionally, Huskey maintains that while he suffers seizures on rare occasions when properly medicated, the seizures are less severe and result in fewer injuries. (ECF No. 48 at 1).

Huskey first directs the Court to Lieutenant Voss's affidavit in which he states that Huskey often complained about not receiving one of his medications. (ECF No. 47 at 2). Second, Huskey directs the Court to the Health Service's response to his grievance which states: "A review of your Drug Prescription Orders indicates that numerous doses of your Phenobarbital and Levetiracetam are not documented between May 9 and 21." (ECF No. 34-4 at 3). Finally, he maintains the medication administration record submitted by the Medical Defendants shows he did not receive his seizure medication on May 1st, May 5th-6th, and May 17th. (ECF No. 48-2 referencing ECF No. 39-6). Huskey maintains there is a genuine issue as to the number of times

---

[6] As Huskey is no longer incarcerated, this requested relief is rendered moot. *See e.g., Martin v. Sargent,* 780 F.2d 1334, 1336 (8th Cir. 1985)(injunctive relief may only be granted against conditions presenting an existing actual threat—request mooted by transfer).

he missed his seizure medication. (ECF No. 47 at 2).

Because the medical administration record (ECF No. 39-6) was difficult to read, the Court directed the Medical Defendants to provide a more legible exhibit or provide an affidavit explaining what the medical administration record showed. On January 9, 2023, the Medical Defendants provided the Court with the affidavit of Nurse Dona Gordon (ECF No. 54-1). Nurse Gordon states that:

> [a] Medication Record is used to track the administration of medications by medical personnel to a patient. The Record reflects the medication type, medication dose, date the medication was ordered and the date the order is to be discontinued. When medical personnel administer medication to a patient, they will initial the box for that corresponding medication and hour.

(ECF No. 54-1 at 1).

Given this explanation, the Court notes that there are no initials in the boxes for the a.m. or p.m. doses of levetiracetam or phenobarbital on May 1st; no initials for the a.m. dose of either medication on May 5th; no initials for the p.m. dose of phenobarbital on May 6th; no initials for the a.m. dose of levetiracetam on May 17th; no initials for doses of phenobarbital on May 17th; and no initials for the a.m. doses of phenobarbital on May 18th or 19th. (ECF No. 39-6). Of course, this case only deals with the time frame between May 6th and May 21st. During this time frame, Huskey missed one dose of levetiracetam and five doses of phenobarbital.[7] *Id.*

As discussed above, inmates have the right under the Eighth Amendment to adequate medical treatment; however, they have no "right to receive a particular or requested course of treatment." *Barr v. Pearson,* 909 F.3d 919, 921-22 (8th Cir. 2018). Physicians remain free to

---

[7] Although outside the time frame at issue in this case, the Court notes the medication administration record contains no initials at all for May 29th or 30th. (ECF No. 39-6). The lines for May 31st were cut off when the document was scanned. *Id.* According to Nurse Gordon, the original documents are not kept after the record is scanned in. (ECF No. 54-1 at 1).

exercise their independent medical judgment. *Id.* Negligence, even gross negligence, does not constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976); *see also Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499 (8th Cir. 2008)("Medical malpractice alone, however, is not actionable under the Eighth Amendment").

When a delay in treatment is alleged, "verifying medical evidence" must be provided to establish the detrimental effect of the delay. *See e.g., Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005)(inmate must place "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment")(cleaned up). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997).

Here, the time frame at issue is from May 6th to May 21st, 2021. While it appears that Huskey did miss doses of levetiracetam and phenobarbital during this time period, this fails to establish deliberate indifference on the part of Dr. Henry or Nurse Wade.[8] *See Zentmeyer v. Kendall Cnty,* 200 F.3d 805, 812 (7th Cir. 2000)(occasional missed dose of medication, without more, does not violate the Eighth Amendment); *Mayweather v. Fote,* 958 F.2d 91 (5th Cir. 1992)(same); *cf. Ervin v. Busby,* 992 F.2d 147, 150-51 (8th Cir. 1993)(approximate one month delay in getting prescription for anti-depressant medication refilled was negligence and did violate the constitution). The missed doses are concerning and certainly illustrate the existence of problems in the medication prescription and/or distribution system. However, in this case, Dr. Braswell asserts, and the records show, that Huskey had therapeutic levels of the drugs in his

---

[8] As discussed above, Huskey clarified in his deposition that he did not maintain Nurse Lambright exhibited deliberate indifference to his serious medical needs.

system during this time frame. Although Huskey did suffer seizures during this period, the summary judgment record fails to establish that Huskey suffered more seizures than usual due to the missed doses of medication. Additionally, although Huskey testified he frequently did not receive doses of his seizure medication and it remained an ongoing problem, the summary judgment record is limited to the short time period in May of 2021 and does not support this proposition. *See King v. Busby,* 162 Fed. Appx. 669 (8th Cir. 2006)(frequency of missed doses of medication may raise an inference that the failure to provide medication was more than an inadvertent failure to provide adequate medical care). The record does not support Huskey's assertions that he was repeatedly denied his medications or that his prescriptions were frequently allowed to expire without being renewed. In fact, the record shows that Dr. Henry responded to Huskey's uncontrolled seizures by increasing his levetiracetam dosage.

Based on the record, the Court concludes Huskey has failed to establish the existence of a genuine issue of material fact as to whether the Medical Defendants acted with deliberate indifference to his serious medical needs between May 6th and May 21st, 2021. Further, the Medical Defendants are entitled to qualified immunity. *Krout,* 583 F.3d at 564 (if the facts do not make out a constitutional violation, the defendant is entitled to summary judgment). For these reasons, the Medical Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the undersigned recommends that:

(1) the Motion for Summary Judgment (ECF No. 34) filed by the ADC Defendants be
> **GRANTED;** and

(2) the Motion for Summary Judgment (ECF No. 37) filed by the Medical Defendants be

**GRANTED and this case DISMISSED WITH PREJUDICE**.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 19th day of January 2023.

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE